Good morning. May it please the Court, my name is Linda Belch, Ms. Cockrell, and I represent the plaintiff and appellant in this matter, Mr. Alan Barcelona. And on this case, we're actually asking this Court to overturn the District Court's decision granting summary judgment against Mr. Barcelona with respect to allegations of violations of his constitutional and statutory rights regarding an administrative investigation. Under the Public Safety Officers Procedure Will of Rights Act, the Court has asked us to address a couple of other issues that I would like to get to first. The first issue being whether Mr. Barcelona lacked standing to assert claims for injunctive and declaratory relief under the United States Supreme Court case of the City of Los Angeles v. Lyons, or alternatively, whether his claims were moot. With respect to the standing issue, the problem in Lyons was two things. One, the illegal nature of the plaintiff's conduct that led to the allegations of unconstitutional action in the first place, and then the speculative nature of what had to happen down the road to have those allegedly unconstitutional actions happen again. The issue turned on the appealers. Yes, there's no hope. His regulation was that he would be re-arrested and have the same thing happen again. Right, and the presumption is that a citizen should not violate the law, and if you don't violate the law, you don't have to be subjected to the possibility. I think that that's really for us at Lyons. For us at Lyons, you don't have standing when the injury in the future is totally speculative. And I don't understand how your client isn't in exactly the same position because he would have to have another administrative process for at least a Lyons violation in which he's asking for a lawyer and the witness qualified for being a witness. Why is that likely enough to be less speculative than Lyons? Well, there's two issues with Mr. Barcelona's investigation. One, that he was denied the representative of his choice because Mr. Clark was designated to act as a witness in the investigation. Also, that he was precluded from speaking about the investigation. Either of those. I mean, the only way that this will happen again is if he has another violation, another hearing. Why do we think that that will happen? That will happen because the department has, well, for two reasons. One, because the department has a policy of preventing subjects of investigations from being represented by witnesses. And the city of Los Angeles had a policy of chokeholds. That was what was at issue at Lyons. But they had a policy of not being able to use chokeholds without revocation. And so the question was, Okay, well, whatever the policy was, there was a policy. And the idea was, it's too speculative that you'll ever run up against this policy. So why is it less speculative that your client will run up against the policy if the fact that there's a policy is the same? Because he can't avoid the potential for future injury just by avoiding violating the law. And if I can point to the court's attention. Well, he never has another hearing about a discipline that he never will have to jump up against this policy. That is correct, Your Honor. Except that that's not the standard, the standard for standing. So to speak, and if I can point the court's attention, the Hodgers-Durgan v. De La Vina, which came out of this court in 1999. 1999, 1037. It was undetested that the plaintiff engaged in entirely innocent conduct. And there, the Border Patrol were routinely stopping motorists near the border without reasonable suspicion. So in order to avoid injury, those plaintiffs would have had to not drive near the border. Now, similar to this, there was no standing, right? Oh, no standing. There was no standing, but there was found that injunctive relief did not exist. There was no standing for injunctive relief, and Your Honor is seeking injunctive relief. So it seems like my case goes against you. Well, we disagree because Mr. Barcelona cannot keep himself out of harm's way. And I'm going to point the court's attention to actually what is a district court decision out of the Southern District of Ohio, which we know is not binding and doesn't serve as precedential. But it is directly on point with the situation that we have here. The irony is the plaintiff was an inmate rather than law enforcement, which is what we're dealing with. The inmate was faced with a rules violation, and he tried to call a witness for his disciplinary hearing. And the institution told him that that witness would not be credible, so that witness did not testify at his disciplinary hearing. The court there said that there's a high chance the plaintiff looked in and suffered the same injury. Maybe that plaintiff was, I don't know the facts of exactly how the prison worked, but maybe prisoners had disciplinary hearings every week in that prison or something. And the court found that there was a high chance that he would suffer the same injury because of this unwritten policy that allowed the institution to make a determination of whether or not the inmates would request the witness, but then the institution could decide whether or not the witness could initially be called. Now, the court pointed to the fact that the correctional officers have the discretion to accuse inmates of rules violations, which would put them before the disciplinary board. And at the exact same situation, we have whether or not the inmate actually did anything wrong. And we have the exact same situation here, ironically again, on the other side of the spectrum with law enforcement. Penal Code Section 148 gives citizens the right to make complaints of misconduct against the police, whether they're valid or not, whether they're justifiable or not. Penal Code Section 832.5 requires the department to have a procedure to investigate those complaints. So, due to no wrongdoing of this person on his own, he could very well be subject again to the same sort of investigation. He could be prohibited from using his own union counsel as his representative, and he could be silenced. That's talking about the circumstances, not only of the investigation, but whenever he's raised in the interview, which can involve union matters, matters that involve the terms and conditions of employment. He could be silenced, as he was in this situation, from consulting with privileged sources. So, you may or may not be convinced of this, but let's say you're convinced that he is standing. Doesn't he need to show that this is a matter of public concern in order to waive his claim? And didn't he, in fact, say it would be improper to talk about the subject of any of this? And why doesn't that mean he's waived any ability to show that this is a matter of public concern? Yes, Your Honor. So, there's two elements with respect to the Pickering test. There's two types of cases out there, and the more common ones are the retaliation cases, which are looking at the content of speech, speech actually made. And then it's easy to say, well, did that involve a matter of public concern, or did it not? Here we have what is more characteristically a prior restraint, and that raises the question of could the speech being restrained involve a matter of public concern? And, yes, there were certain elements of the investigation issue that Mr. Barcelona wanted to keep private, but there were certain elements of the investigation, you know, the underlying allegations arose during a meeting that involved the discussion of many things that were then had to be kept confidential. The part of his affirmative verdict in making that First Amendment case to show that he has the type of standard by having a matter of public concern, and I think he said nothing to tell us why this is a matter of public concern. Well, it is the chilling effect of the prior restraint on speech that presumptively makes it a constitutional issue and presumptively can exclude issues of public concern. I think when it's a prior restraint, you can't just affirmatively say, no, it's not going to involve issues of public concern. Did you argue in the district court that this is a prior restraint that's keeping me from talking about matters of public concern? We did not use the term prior restraint, Your Honor. Or public concern. Did you talk about Pickering? No, we did not talk about Pickering. Well, we said in Pickering for the proposition that the government bears a heavy burden that in order to restrict speech, they have to show a legitimate justification for it, but no, not for the Pickering. Did you argue in our court about whether this was public concern? No, Your Honor, it was actually not raised in either court, either by us or by the state or by the district to the judge. And I don't think that it necessarily compels the conclusion that the issue has been waived. And the summary judgment is appropriate. This may be more of a matter where the record needs to be or the case needs to be more developed in the district court by a reversal of summary judgment and continuing on to the merits of the case where that question can be more definitively answered based on a more developed record than what was an issue for the summary judgment motions. But if I can draw your attention very briefly to the Meaden v. Tice case that very recently came out of this court on August 22nd, it was with respect to the prior restraints on speech. It was a very similar situation. But it was very clear in that case that there was a matter of public concern, right? It certainly had a better development record, Your Honor. But it was the same sort of speculative nature about the possibility when the department is saying you cannot speak about this at all in light of prohibition. It covered such a broad range of topics that could arise that as this court found in Movement, it can involve issues of public concern. And with Mr. Barcelona, this case affected union issues and not being able to discuss even the investigation, the existence of the investigation limited his ability to effectively function as the union president. It had to do with securing funds for representation moving forward with issues. If the complainant was to raise the case in the media or publicly, Mr. Barcelona would not have been able to respond because he had been muzzled by this prior restraint. And that impacts the union. It impacts all the members of the union. And this case is found that the relationship between the union and the Magnolia City case with the city officials has been held to be a matter of public concern. And as McKinley v. City of Eloy, it's the same situation that we have here. Mr. Barcelona, as the union president, had significant issues involved in this administrative investigation that he was muzzled from speaking about. I know I have four minutes left, but I'd like to reserve a rebuttal. Thank you. Good morning. Kristin D'Elia on behalf of the California Department of Justice, Larry Wallace, Nathan Duvalli, Brent Oren, and Catherine Cotillier. First, with regard to the City of L.A., the Lyons case, it is very similar, as I think was raised with the council. This situation is not likely to recur unless Mr. Barcelona is again alleged of engaging in misconduct that is witnessed by the person who he wants to be his representative. Your response to that was that maybe at least the claim about being muzzled and speaking about the issue, so not who the representative is, but the other claim that's about, he could talk about the investigation and that might be more likely to recur. Sure. He certainly could be alleged of engaging in misconduct again, just as Mr. Lyons could have been accused of a crime again. In that case, the fact wasn't that he was convicted of a particular crime, or that he would be convicted again, just the fact that he could be arrested again. I don't think that there's any greater probability that Mr. Barcelona is going to be accused of doing again than Mr. Lyons is going to be arrested for some violation again. I just don't think it's any more likely. What is the policy? It seemed like at one time he was told he couldn't speak to anyone about the investigation, and somewhere else it seems he was told he couldn't speak to anyone at DOJ about the investigation. There is not a written policy. My understanding of what the admonishment that is given to witnesses and subjects is that they are not to talk to any department employee or anybody connected to the investigation. It is in the record that Mr. Barcelona didn't understand what the administrative admonishment was. He did not understand that he couldn't speak to his wife about this, or his doctor about this, or his clergyman about this. I think that's a red herring. And if you have a prior restraint, is there any burden on the plaintiffs to show that what they would have said is a public concern? It seems like it was stuck there. It seems like the records were silent about, well, if I hadn't been restrained, what I would have talked about would have been this, as opposed to something that was in the office that would not be protected, but it was a private solicitor, whatever you're going to say. There's not anything like that. No, there is no evidence in the record about what Mr. Barcelona was prevented about, what the plaintiffs were talking about, that was of a public concern. Now, is there a way on the part of the restraints that you say, you don't deserve a prior restraint case because from this moment we have a public interest? No, I think in the Gibson case, the Department of Justice case, they applied a public concern element to a prior restraint case, and in that case they found that you can reasonably regulate the speech, particularly when there's no public concern. I think it really comes down to a balancing, and I think it's almost the same analysis that we argued and that was actually used below on a time, place, and manner restriction. Was it reasonable? This wasn't, I don't understand how you could have, this is a time, place, and manner, it's a content-based, he can't talk about the investigation, it's not a content-neutral time, place, and manner, so that was quite confusing to me. It's very narrow. When someone says that they can't talk about issues that relate to the meeting, where this issue arose with their union business, that is not the case. That is not what the acknowledgement stated. It was about the facts of the investigation, and specifically that's a content-based restriction, so a time, place, and manner case law seems to have no bearing on this at all. I think they did, and it's so narrow in terms of what, so you may be able to just go ahead and do it, and just defy the substance and do this. But it's not, I don't understand all the time, place, and manner cases that can be content-based, and this is plainly content-based. It's telling him that he can't talk about a certain subject. It may be in a certain, and he can go for a certain period of time, but a certain time or an issue surrounding the subject, that's content-based. I think the Gaines case is applicable here. That was a Central District, California case, and they found that the admonishment, the same admonishment, did not violate First Amendment. Okay, so that might be on the merits, but not because it was a time, place, and manner restriction? I don't remember the reasoning of that case. Well, they found that there was no compelling interest, because that had to be viewed as a content-based restriction, and that maybe you pass strict scrutiny, or maybe you have some lower levels of scrutiny, because it's not underpickering public interest. But the idea that it's just a time, place, and manner, like you can talk about it outside, but not inside, is like almost frivolous. It seems I don't quite understand how that was what the state, or, yeah, the state, how they litigated this. All I can say is that's how it was litigated, and that's what was ruled by the District Court. I would also say, though, that in terms of the public concern issue not being developed, although it certainly wasn't, and, again, there's been no evidence that Mr. Barcelona was restricted from speaking about any union business, the fact of a particular threat made by him against a citizen does not encompass union business. And this public concern issue is one that can be decided as a matter of law. You know, going to the merits, then, of the case, I think one of Mr. Barcelona's issues with the development of the case in lower court was that there was no evidence that the administrative admonishment and keeping him from having a witness as a representative violated the integrity of the investigation. He said, look, you can't point to anything that shows that it violates the integrity of the investigation. And we did submit, in evidence below, there was a declaration in the citation to a treatise, but I would also say to all the POBAR cases, the city of Pasadena case, the Orange County, the LA deputy sheriff's case, Upland, Ellis, and Ellens, and the Gaines case, all of those are revolving around restrictions regarding police interrogations or investigations into police misconduct and anti-huddling rules, preventing witnesses from talking to each other, and they're all designed to increase the integrity of the investigation. And this was also raised in the Fraternal Orders Police case, which cites to the city of Auburn the Black case, where that, of course, states, quote, it appears to the court perfectly reasonable during an internal investigation to limit the access of the employee being investigated to the witnesses in the investigation in order to ensure that the investigation results in the most accurate and complete conclusion possible. And then they found that the argument that such noncompetent management violates the free speech is frivolous. And I would say in this day and age, when investigations into police misconduct are in the news on a day-to-day basis, it's so important that law enforcement agencies protect the integrity of these investigations. I can only imagine if it hit the press that, you know, somebody, a special agent who is engaged in serious police misconduct is allowed to meet with a witness prior to either one of them's interrogation before the law enforcement agency investigating that complaint. That is going to erode the public confidence in these investigations, and I think we do need to ensure that integrity. And again, going back to the merits, if you look at the Gates case, it's directly ongoing. I know counsel tried to distinguish the case in a brief that it had to do. It was an undercover case, but that really is a difference without, or a distinction without a difference. And in regard to police corruption, again, this case regards serious police misconduct. There just is a difference. And then I would finally just like to go to the qualified immunity argument that was raised in the court below but not ruled on by the district judge. And then if you look at the Futurama Law and Order of the Police case, it clearly applies to qualified immunity. It was not clearly established, it is not clearly established that giving administrative admonishment to a witness and not letting them confer with other witnesses prior to their interviews violates. You're talking about qualified immunity, but there's no claim for damages in these cases there? Not with regard to 1983. So I don't understand why you're talking about qualified immunity. Okay. There was some confusion at the beginning of the case with regard to how the complaint was set forth. At the end of the complaint, there was a request, and there was a relief stated for each claim. And after the 1983 claim, she clarified in her reply brief that there's no reason for the state to be talking about qualified immunity, so I'm confused why you're just talking about it. And finally, I actually, since I don't have time, under the POBR Cause of Action Council, the Appellant's Council refers to the Ellens case and the discussion of the word implicated. And in that case, witnesses who were implicated could not represent or confer with other witnesses. And the appellant line cuts the word implicated to subject to the investigation or subject of, and I would just point out that the term implicated is much more broad. It is more like subject to rather than subject of. A subject of an investigation has a very particular meaning. You're the subject. You get a subject letter. You get particular rights under the Peace Officer Bill of Rights. But being subject to just means that you're a recipient witness. Just like being implicated, you are involved in the situation. Unless there's any further questions. Thank you, Counsel. Thank you. Very briefly, Your Honors. With respect to the cases that Counsel cited regarding the limitations on representation under POBR, those are based on the specific underlying facts of the investigation. For example, in the Ellens case, the anti-huddling case, that was in the immediate aftermath of a deputy-involved shooting, and the court noted that that was a crucial time period where the witnesses couldn't talk to each other. But they were free to talk after the administrative proceedings continued further down that line. Gates involved an investigation of criminal corruption among the police officers. Pasadena police officers involved the right to pre-interrogation, discovering not representation issues or blanket prohibition issues. There's a lot of general language regarding that. For general language, don't we need to follow the general language to think about what the California Supreme Court would say in response to this question? Yes. Yes, as a guideline, but not as a mandate. And there's also other language regarding the purpose of POBR. And I believe it is also from the California Supreme Court. The County of Riverside versus Superior Court, protecting peace officers from unfair attacks on character, unfair or wholly fabricated allegations of misconduct. That is one of the purposes of the procedural protections of POBR. And, of course, the constitutional rights as well. And that brings me back to Pigring and the issue of standing. Now, with respect to Pigring, we also, within our First Amendment claim, we also have a freedom of association claim. And so, of course, the addressing matters of public concern would not apply there. And your freedom of association claim is that you have a right to associate with the representative of your choice. That is correct. And what case is your best case for that proposition? You know, the best case, there's nothing that is as on point as we would like it to be. But certainly the Mothershed case about the right to be free from state interference in consulting with legal counsel. And then the Brotherhood of R.R. Trainman versus Virginia, the United States Supreme Court case about the importance of a union being able to consult with a representative. Again, it's more of the general principles that we've talked about. But the way that this case went down is that Mr. Barcelona was noticed for the investigation. He then was told subsequently, he was told he could not talk to witnesses, was not told who those witnesses even were. So the department was exposing him to allegations, more allegations, he discovered. And in the instant there was an issue, so we would have known who was there? Yes and no. There was a meeting. Then the allegations were not that Mr. Barcelona made threatening comments to the complainant. The record reflects he didn't even know the complainant. The allegations were that threatening comments were made on his behalf. So how Mr. Barcelona was not quite sure how everything got from point A to point B with respect to the allegations, I guess to him it was a broader universe. And very briefly, I just want to point, the council raised the National Order of Police, which is a D.C. circuit case, which had to do with standing. And that case focused on the admonition, because the admonition was the exact same thing. They could not talk about the investigation. These were uniformed Secret Service agents. And the court focused on the chilling effect of the prior restraint, not whether the speech was conflating a matter of public concern, but it would chill the speech and prevent the officers from discussing things with one another that might be relevant and might involve the terms and conditions of their employment. The biggest problem with the state's actions in this case is they took a unilateral action. It was entirely overbroad. They offered no reasons specific to the facts, the underlying facts of the allegations against Mr. Barcelona, and there was no method to challenge it. And with that, we would submit. Thank you very much. Thank you. As a couple arguments, the case is submitted. And we are adjourned for the day. Good night. Thank you.
judges: Schroeder, Friedland, Whaley